## Kusevich *v.* H. J. Heinz Company, Appellant.

Argued May 6, 1942.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Charles F. Patterson,* with him *Paul M. Duff,* for appellant.

*Clair D. Moss,* for appellee.

OPINION BY BALDRIGE, J., July 23, 1942:

The employer in this case contends that there was no proof of an accident within the provisions of our

compensation laws to support the award upon which a judgment was entered.

The essential facts are not in dispute. The claimant, John Kusevich, was in the employ of the defendant H. J. Heinz Company for many years. His work consisted of handling defendant's products when they were packed in boxes, sealed with glue and ready for shipment. The glue when fresh not infrequently stuck to his hands. On June 18, 1939, at the lunch hour he went to the washroom in the plant as was his custom to wash his hands and to remove the glue therefrom. He used hot water and the same soap that he and a large number of his fellow employes had been using without apparent ill effect for years. He scrubbed his hands and scraped the glue off them with his fingernails, but there was no evidence that he scratched himself or made any opening in his skin. About 4 o'clock his hands began to burn, the skin cracked and a rash appeared. At the end of three days the skin affliction had extended to his elbows and was so painful that he quit work. His condition grew worse and on June 29, 1939, he consulted Dr. Samuel R. Perrin, who, upon examination, found that the claimant was suffering from a dermatitis principally on his hands and forearms which had spread to some extent to other parts of the body. After the claimant had given him a history of his affliction and he had received some of the glue and liquid soap the doctor "patch-tested" claimant with these materials and found he had a positive reaction to the soap and a negative one to the glue. He testified in part on cross-examination as follows:

"Q. The constant use of this soap, which constituents you know nothing about, might cause the disease from which this man is said to be suffering, is that true?

"A. Yes.

"Q. Whether it came from long continued use or

some particluar thing, you couldn't possibly say, could you?

"A. Nobody could."

Dr. Meyer W. Rubinstein, a dermatologist called by the claimant, examined him on August 2, 1940. He also reached the conclusion from the history he received that the man was suffering from dermatitis due to the use of the soap, although he did not make a patch test. He stated that dermatitis could develop slowly over a period of time or suddenly and that it was quite possible that something in claimant's daily existence may have made his skin sensitive to the soap. When asked if the use of the same soap for many years or one particular day caused claimant's affliction, he replied: "I don't know."

The defendant offered no medical testimony, but produced the vice-president of the company which supplied the soap and he testified that it was the same type that had been furnished many customers for a number of years; that it was free from injurious constituents and no complaints had ever been received that anyone had suffered ill effects from using it.

The referee found that the claimant had sustained an accident in the course of his employment on June 18, 1939, and his action was upheld by the board and the court below.

The facts before us present a case of an employee on the date of the alleged accident doing the same character of work and in the same manner that he was accustomed to with no unusual occurrence constituting a mishap or fortuitous happening: *Adamchick v. Wyoming Valley Collieries Company*, 332 Pa. 401, 3 A. 2d 377. Concededly he had dermatitis and there was evidence that it was caused by the soap. Whether it was the result of the use of the soap on that particular date or due to a daily use for a long period the medical authorities said frankly they could not state. But mere

236

proof of an injury, apparently attributable to claimant's skin being allergic to this soap, does not justify a conclusion that the injury resulted from an accident: *Adamchick v. Wyoming Valley Collieries Company*, supra; *Dolinar v. Pittsburgh*, 140 Pa. Superior Ct. 543, 14 A. 2d 871.

We are fully aware that the appellate courts have consistently recognized that if one has a physical condition that renders him more susceptible to the injury he has sustained than the average person, that of itself does not defeat his right to compensation. *Procopio v. Susquehanna Collieries Company*, 122 Pa. Superior Ct. 514, 186 A. 283, relied upon by the court and cited by the appellee is but one of the many cases supporting that doctrine. There must, however, in all cases be an accident. Here there was none.

The judgment is reversed and is now entered for the defendant.