Cole, Appellant, *v.* Pennsylvania Power &
Light Company.

Argued March 6, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (WOODSIDE, J., absent).

*Leigh B. Maxwell,* for appellant.

*James P. Harris, Jr.,* for appellee.

OPINION BY MONTGOMERY, J., April 12, 1962:

In this case under the Workmen's Compensation Act, the Board found upon sufficient and competent evidence (inter alia) that, ". . . in August, 1955 the claimant was employed by the Pennsylvania Power & Light Company as a line worker. During said period the area in which the claimant worked was flooded by a flash flood and the claimant's duties required him to work in said area, trouble-shooting and repairing damage to Company facilities caused by the flood.

". . . the defendant company arranged for and notified their employees to get their first para-typhoid vaccine shot at the Lakeville Club, at Wilsonville, on August 23, 1955 and their second and third shots on August 31, 1955 and September 7, 1955, at their Pennsylvania Power & Light Company office in Honesdale.

". . . claimant received said para-typhoid shots in his left arm on the above mentioned dates. On September 7, 1955 following the third shot, the claimant's left arm hurt and gave him trouble. . . . as a result of the injection on September 7, 1955 the claimant suffered radiculoneuritis, occurring as a result of the typhoid vaccine toxin attacking the peripheral nerve of the left arm and traveling over said nerve to attack the spine."

The issue presented to us is whether the above recited set of circumstances constitutes an accidental injury within the meaning of the Workmen's Compensation Act. Although the Referee found that it did, the Board concluded that it did not, and disallowed compensation. The lower court affirmed and this appeal followed.

In its appeal to the Board from the decision of the Referee, appellee contended that this was neither an injury nor an accident as contemplated by the Act, and further, was not an occurrence within the scope of claimant's employment. The decision of the Board was not based on the last contention but only on the first two, viz., that this did not constitute an accidental injury as intended by the Act.

Section 301(c), art. III of the Compensation Act of June 2, 1915, as amended (77 P.S. 411), defines the terms "injury" and "personal injury" to mean only violence to the physical structure of the body, and such disease or infection as naturally results therefrom.

We conclude that claimant's injury meets that definition. His ailment was sudden and not gradual as in the case of disease. It was a direct and violent attack

by the vaccine upon the physical structure of claimant's body, viz., the nerves of his arm and spine. In *Flowers v. Canuso & Son,* 115 Pa. Superior Ct. 234, 175 A. 287, recovery was allowed when a tetanus antitoxin injection caused an acute dilation of the heart from which death resulted. In *Billo v. Allegheny Steel Company,* 328 Pa. 97, 195 A. 110, the distinction between injury and disease is discussed. Therein it is noted that both disease as well as injury does "violence to the physical structure of the body." However, the distinction made is that violence as used in the case of injury implies a vehement application of force as the word might be used to describe the destructive force of a storm, whereas, as it relates to disease, it means the gradual progress of the ailment.

The term injury is sometimes mistakenly used to imply accident, but in order to receive compensation a claimant must prove both the accident and the injury; the terms are not interchangeable and the proof of one does not establish the other. *Crispin v. Leedom and Worrall Company,* 341 Pa. 325, 19 A. 2d 400; *McCleary v. Pennsylvania Electric Company,* 184 Pa. Superior Ct. 185, 132 A. 2d 389.

The cause of injury may originate from within the body and is not limited to external violence. *Ferraro v. Pittsburgh Terminal Coal Corporation,* 142 Pa. Superior Ct. 22, 15 A. 2d 559; *Pirillo v. Barber Asphalt Company,* 140 Pa. Superior Ct. 334, 13 A. 2d 906. However, the injection of a foreign substance could, in our opinion, be classified external.

Appellee argues that in order for this injury to be within the definition of that term the exact time of its occurrence must be established, citing *Loudon v. H. W. Shaull & Sons,* 140 Pa. Superior Ct. 106, 13 A. 2d 129. This is true as a general proposition, as the purpose of the rule is to aid in distinguishing between an acute condition such as an injury and a progressive disease.

However, the time requirement is not as exact as appellee contends. In that case the rule is stated as follows, "The exact moment an accident occurred need not be determined, but the date should be definitely stated with reasonable certainty."

In the present case claimant received two injections, according to his own testimony, without any injurious results. It was only after the third one that he experienced a reaction which he said was immediate. The evidence, considered as a whole, supports the finding of the Board that the injection on September 7 was the cause of the reaction that resulted in claimant's disability.

The more serious question is whether claimant's injury was caused by an accident.

The injection in the present case was a precautionary measure recommended by the appellee but was not compulsory and involved no neglect in selecting or administering the serum. It was a proper preparation and was administered with proper technique.

In determining whether there has been an accidental injury as contemplated by the Compensation Act, "The word accident . . . must be interpreted in its usual, ordinary, popular sense. Webster has defined it as 'an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency.' . . . That which distinguishes an accident from other events is the element of being unforeseen; an accident is an occurrence which proceeds from an unknown cause, *or which is an unusual effect of a known cause, and hence unexpected and unforeseen.*" *Baur v. Mesta Machine Company,* 393 Pa. 380, 384, 143 A. 2d 12, 13; *Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 577, 164 A. 724, 725. (Emphasis supplied)

In our present case the injection was planned and voluntarily assumed. Therefore, if this was an accident

the case must fall into the second category involving an unusual and unforeseen effect of a known cause. When an employe voluntarily exposes himself to the elements or to other conditions which may naturally and foreseeably lead to injury or death, we have held that there has been no accident for which compensation could be awarded. *Parks v. Miller Printing Machine Company,* 336 Pa. 455, 9 A. 2d 742; *Osterritter v. Moore-Flesher Hauling Company,* 150 Pa. Superior Ct. 236, 27 A. 2d 262. However, when unexpected and unusual pathological results occurred from work or acts voluntarily performed by the employe and not marked by any abnormal or unusual feature, it has been held that such a set of circumstances is accidental and compensable. *Good v. Pennsylvania Department of Property & Supplies,* 346 Pa. 151, 30 A. 2d 434; *Gammaitoni v. Gasparini Excavating Company,* 185 Pa. Superior Ct. 643, 139 A. 2d 679, and cases cited therein.

The novel question presented to us in this case is whether the rule just recited is to be applied when the unusual result is caused by an injection rather than by the normal activities of an employe. The case of *Flowers v. Canuso* (supra) does not completely support this proposition because in that case the antitoxin was related to an established accidental injury to the claimant's hand; and we have not found nor been referred to any other Pennsylvania case on this point. However, the same question has been raised in other jurisdictions and resolved favorably to the claimant. The *Spicer Manufacturing Co. v. Tucker,* 127 Ohio St. 421, 188 N.E. 870, and cases cited therein. In the *Ohio* case the unexpected result was infection following a vaccination, and it was not demonstrated whether the infection was due to a germ entering the vaccination wound or from the vaccine. The court concluded that the result would be the same, that vaccinations are

usually harmless, and infection therefrom is an accident.

The present findings in the present case indicate they were equally unexpected. Claimant had received two injections without harmful results; many of his fellow employes had received them without harmful results; Dr. Owens, who testified for claimant, said he had never experienced such results in private practice although he had witnessed them during his service in the army; and there is an absence of testimony to the contrary.

Although we conclude that the rule is applicable to cases of this nature, we do not conclude that it is applicable to claimant in this case. It is to be kept in mind that it is to be applied only in cases where the claimant has theretofore been a normal, healthy workman with no physical weakness other than is common to all men. *Traino v. Murray Corporation of America,* 189 Pa. Superior Ct. 423, 150 A. 2d 368; *Banks v. Brazee,* 165 Pa. Superior Ct. 268, 67 A. 2d 631; *Rovere v. Interstate Cemetery Co., Inc.,* 164 Pa. Superior Ct. 233, 63 A. 2d 388. Therefore this matter must be remanded to the Board for such a finding.

Furthermore, the Board has not made a finding as to whether claimant's injury arose out of or in the course of his employment. This must also be determined before compensation is allowed.

The decree of the lower court affirming the order of the Workmen's Compensation Board is reversed and the record is remanded to the Board for further proceedings consistent with this opinion.

RHODES, P. J., dissents and would affirm the court below on the ground that there was no injury as the result of a compensable accident.